|UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AMA SYSTEMS, LLC, ET AL.,

               Plaintiffs,

v.

VONNIC, INC., ET AL.,

               Defendants.

Civil No.: 1:22-cv-00652-JRR

## MEMORANDUM OPINION

This matter comes before the court on Defendants Vonnic, Inc. (hereafter "Vonnic") and Kim Por Lin's Motion to Dismiss, or, in the Alternative, Request for Transfer of Venue.  (ECF 16; the "Motion".)  The court has reviewed all motions papers.  No hearing is necessary.   Local Rule 105.6  (D. Md. 2021).

**BACKGROUND**

According to the complaint and pending motions papers, this case arises out of a business dispute in which Defendant Vonnic agreed to sell certified KN95 face masks to Plaintiff Bluemar Promotions, LLC (hereafter "Bluemar"), who, in turn, contracted to sell them to Plaintiff AMA Systems, LLC (hereafter "AMA Systems").  According to Plaintiffs, Vonnic and Vonnic's CEO, Defendant Lin, represented to Bluemar that Vonnic could provide "FDA and CE certified" "KN95" face masks.  Defendants also provided Bluemar a catalogue that displayed face masks with those specifications.  (ECF 1.)

Plaintiffs allege that, relying on those representations, Bluemar entered into a purchase agreement with Defendants for one million certified face masks priced at $2 per mask. The Bluemar/Vonnic purchase order includes the following specifications: "KN95 Disposable Face Mask - Packaged 50 per carton in sleeves of 10 each… PO is for KN95 MASKS FDA NO: 1066564. Masks must say KN95. FDA Certified: Certificate No: JF-FDA-0328-0116 CE Certified: Certificate No: 4Q200407M.SCTUU98." (ECF 1 p. 5.) Bluemar also entered into a purchase agreement with AMA Systems to sell the Vonnic face masks to AMA Systems.

Plaintiffs allege that Defendants shipped the face masks directly to the AMA Systems warehouse in Elkridge, Maryland.[1] They further claim that the face masks they received did not have the agreed-upon certifications and were not NK95 masks, in breach of their agreement. After discovering the product was non-conforming, Lin, on behalf of Vonnic, agreed to refund Plaintiffs one half of the purchase price, but later revised its proposed remedy and proposed a credit of $250,000.

---

[1] There appears to be a conflict or inconsistency in the complaint allegations as to whether the face masks were shipped directly to AMA Systems in Maryland, or whether Bluemar retrieved them from Vonnic's location in California and then shipped them to AMA Systems. (Compare ECF 1 ¶ 20 with ¶ 29.) Defendants' Motion to Dismiss includes as an exhibit (ECF 16) what Defendants proffer are copies of Bluemar/Vonnic purchase orders and emails to demonstrate that Vonnic did not ship the masks directly to AMA Systems in Maryland, as alleged in paragraph 29 of the complaint. Defendants request that the court credit the facts alleged in paragraph 20 and to discredit the facts alleged in paragraph 29. (ECF 16 p. 7.) When considering a motion to dismiss, extrinsic materials, like the exhibits submitted by Defendant, are not properly considered. *Zak v. Chelsea Therapeutics Intern., Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 448 (4th Cir. 2011)) (In deciding a motion to dismiss, courts are generally limited to "considering the sufficiency of the allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'"). A court may only consider extrinsic documents attached to a motion to dismiss where the document is "integral to and explicitly relied on in the complaint," and when "the plaintiffs do not challenge the [document's] authenticity." *Id.* A document is not "integral" to a complaint unless its very existence, not merely its content, is foundational to the complaint. Accordingly, the court has not considered Defendants' exhibits. Further, for purposes of the Motion, the court will accept as true the allegations set forth in paragraph 29 of the complaint that Vonnic shipped its product to AMA Systems in Maryland in view of the fact that Plaintiffs bear the burden to overcome Defendants' request that the court dismiss the complaint for lack of personal jurisdiction, improper venue and for failure to state a claim. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

Plaintiffs filed this action including claims for breach of contract (Counts I and V) and breach of representations and warranties (Counts II, III, and IV). (ECF 1.)  Defendants Vonnic and Lin responded by filing the Motion seeking dismissal of the complaint on the basis of lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(2), 12(b)(3), 12(b)(6).

**STANDARDS**

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal for lack of personal jurisdiction. FED. R. CIV. P. 12(b)(2).  On a Rule 12(b)(2) motion, "the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).  A plaintiff is simply required to make a prima facie showing of personal jurisdiction to survive a motion to dismiss on these grounds. *Id.*  In making this determination, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 60 (4th Cir. 1993).

A motion to dismiss may also be filed for failure to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  To survive a motion for dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. Twombly,* 550 U.S. 544, 556 (2007)).  This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  At the motion to dismiss stage, all reasonable inferences are drawn in favor of the Plaintiff.   *Nemet Chevrolet, Ltd. v.*

*Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). The court assumes all well-pled facts to be true on a motion to dismiss. *Id.*

**ANALYSIS**

**I. Waiver**

Plaintiffs begin their opposition to the Motion by asserting that Defendants waived their challenges to personal jurisdiction and venue pursuant to Rule 12(h). In view of the impact such a finding could have on the balance of the court's review of the Motion, the court addresses first Plaintiffs' waiver argument.

Rule 12(h) provides in relevant part that a party can waive its motions under Rule 12(b)(2) through (5) by 1) bringing one such motion and failing to bring all that are then available (*i.e.,* Rule 12(b)(2) through (5) defenses may not be filed *ad seriatim*); 2) failing to file such a motion prior to or in a responsive pleading; 3) or by simple failure to file as a general matter.

Plaintiffs rest their waiver argument on two grounds: Defendants' "litigation conduct to date" and "making a general appearance before this Court." (ECF 17 at p. 2.) Specifically, Plaintiffs argue that by filing a motion for an extension of time to respond to the complaint with a "responsive pleading or motion" (ECF 14), Defendants waived their right to object to personal jurisdiction and venue because the motion for extension did not raise an objection to personal jurisdiction or venue, and because the motion for extension gave Plaintiffs the reasonable expectation that Defendants intended to defend the merits of the action in Maryland.

Plaintiffs rely on several cases in arguing that Defendants' motion for extension of time to file a responsive pleading or motion waived 12(b)(2) and (3) objections.

*Savas v. Maria Trading Corp.,* 285 F.2d 336 (4th Cir. 1960):

In *Savas,* an admiralty case, the Fourth Circuit affirmed the district court's determination that the defendant trading corporation waived its right to object to personal jurisdiction.  Having been impleaded into the action (or on notice that it was about to be), defendant  Maria Trading Corporation filed exceptions to a ruling that raised the potential for it to bear liability in connection with a lien on a vessel.  Importantly, the defendant at the time of its exceptions had no cognizable interest in the vessel because it had been sold to another entity.  Therefore, the defendant could not avail itself of the rule in admiralty proceedings that a vessel owner can appear before the court in answer to a libel *in rem* proceeding (to preserve its right in the thing) without generally submitting to the court's jurisdiction *in personam*.

As a result, when Maria Trading Corporation filed its exceptions seeking a ruling that it was not liable and neglected to object to the court's personal jurisdiction over it, the court ruled that the defendant waived any such objection.  "[I]t should not be heard to say that the court had the power to decide in its favor but no power to render a decree against it.  It subjected itself to the general rule that a litigant who seeks action by the court without objecting to the jurisdiction thereby makes a general appearance and subjects itself to the court's power. . . .  Whatever be the proper rule as to the power of the court to impose personal liability upon the owner of a ship who comes into a case merely to resist a lien upon his property, there is no good reason to extend the immunity to one who no longer owns the vessel but merely seeks relief from personal liability." *Savas,* 285 F.2d at 341.

This case is inapposite.  By seeking an extension to respond to the complaint by pleading or motion, Defendants did not seek action by the court as to the merits of any matter or otherwise to protect itself from liability as in *Savas*.  Further, Defendants' request put Plaintiffs (and the court) on express notice that Defendants may object to the jurisdiction or venue of the court, and

therefore did not by action (or inaction) create a reasonable expectation that they would elect to defend the merits of the action in this court; nor did Defendants' extension request violate Rule 12(h)'s prohibition on Rule 12 motions filed *ad seriatim*.

   *Trust Co. Bank v. Tillgen-Millford Drapery Co.,* 119 F.R.D. 21 (E.D.N.C. 1987):

   In *Tillgen-Millford,* the court ruled that a telephone conversation between opposing counsel during which defense counsel asked plaintiff's counsel what the deadline was to answer the complaint put plaintiff's counsel on notice by implication that the defendant intended to defend the action such that entry of Rule 55 judgment was improper.  Notably, this case does not pertain to activities sufficient to waive Rule 12 objections.  Instead, the case is about whether a defendant's activities will suffice to notify a plaintiff of an intention to defend the action rendering judgment by default inappropriate.  The court found that, although the defendant had not filed a response to the complaint, defense counsel's inquiry about the deadline to respond to the complaint implied an intent to do so; and, therefore, the plaintiff was not entitled to judgment by default.

   This court is unwilling to equate what suffices for notice of an intention to defend for Rule 55 purposes with what rises to the level of waiver of an objection to the court's personal jurisdiction.  The jurisprudence on default judgments is plain that default judgments are disfavored, which has lent to a rather permissive view of what constitutes an "appearance" in order to "support the policy against unnecessary defaults."  119 F.R.D. at 22 (citing Wright, Miller & Kane, *Federal Practice and Procedure: Civil* § 2686 (2d ed. 1983)).  Further, the facts of *Tillgen-Millford* are materially distinguishable from the instant case.  Defendants' request for extension of time to respond to the complaint by pleading or motion placed Plaintiffs equally on notice to expect a pleading or Rule 12 motion.

*King v. Taylor*, 694 F.3d 650 (6th Cir. 2012):

In *King*, the Sixth Circuit held that Defendant Taylor waived his Rule 12 service objection despite having expressly included it in his answer to the complaint because he slept on his right to seek a ruling on the objection.  By actively engaging in litigation without raising the issue until the summary judgment stage, Defendant Taylor forfeited his objection.  Importantly, the *King* court explored the differences between an objection that service was improper and an objection to the court's personal jurisdiction:

> "Recognizing that service of process is simply the means by which a defendant receives notice of an action and is formally brought within a court's jurisdiction, whereas personal jurisdiction concerns the fairness of requiring a defendant to appear and defend in a distant forum, we agree with the Second Circuit that, as between the two defenses, it is relatively easier to find forfeiture of a service defense."

*King*, 694 F.3d at 659, citing *Hamilton v. Atlas Turner, Inc*., 197 F.3d 58, 61 (2d Cir.1999).

Further, as for the test of whether a defendant has forfeited the right to object to personal jurisdiction through litigation conduct (versus a court filing) the *King* court explained:

> "[W]e ask whether a defendant's conduct prior to raising the defense has given the plaintiff 'a reasonable expectation' that the defendant will defend the suit on the merits or whether the defendant has caused the court to 'go to some effort that would be wasted if personal jurisdiction is later found lacking.'"

*Id*. (citations omitted).

As set forth above, Defendants in the instant action engaged in no conduct giving Plaintiffs a reasonable expectation that Defendants would defend the suit on the merits; nor have they taken action that would waste judicial resources should the court later determine personal jurisdiction may not be exercised.

*Mobil Oil Co. v. Jimenez,* 948 F.2d 1282, 1991 WL 237794 (4th Cir., amended Dec. 9. 1991):

In *Mobil Oil*, a Virginia removal case, the Fourth Circuit applied Virginia state substantive and procedural law to reverse the district court's determination under Virginia law that the defendant had not waived his objection to the court's personal jurisdiction by filing a notice that announced its purpose as "intended to act as an affirmative response" as well as a motion for extension of time "to file a later answer/response to" a pending declaratory judgment motion. The *Mobil Oil* court examined Virginia procedure, which differentiates a special appearance from that of a general appearance, to determine that the defendant's actions amounted to a general appearance and thus waived his right to object to personal jurisdiction.

Reciting the general rule that "[a]n appearance may arise by implication from defendant's seeking, taking or agreeing to some steps or proceedings in the cause beneficial to himself o[r] detrimental to plaintiff," the court concluded that the result would be "similar" under application of the Federal Rules and procedure, but reiterated that its affirmance was based on application of Virginia procedural and substantive law. 1991 WL 237794 at *4.

*Mobil Oil* is based on Virginia law, making only passing reference to a "similar" result under federal law. It is therefore of little value to the instant dispute. That said, as set forth above, Defendants did not take action that gave Plaintiffs a reasonable expectation that the suit would be defended on its merits; nor did Defendants engage in conduct that would otherwise effect a waiver by implication. Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1391 (3d ed. 2004) ("If that party wishes to raise any of these defenses, that must be done at the time the first significant defensive move is made—whether it be by way of a Rule 12 motion or a responsive pleading. Furthermore, a party can be held to have waived a defense listed in Rule 12(h)(1) through conduct, such as extensive participation in the discovery process or other aspects

8

of the litigation of the case even if the literal requirements of Rule 12(h)(1) have been met, although the cases are far from uniform . . . .")

*Heleasco Seventeen, Inc. v. Drake*, 102 FRD 909 (Del. 1984):

Like *Trust Co. Bank v. Tillgen-Millford Drapery Co., supra, Heleasco* examined whether counsel's telephone exchanges rose to the level of a Rule 55 appearance to disallow entry of judgment by default. As set forth above, in view of the disfavored status of default judgments and the more protective treatment afforded waivers of personal jurisdiction,[2] the court finds *Heleasco* of little value to the present analysis.

For the reasons explained above, the court finds that Defendants did not waive their rights to raise venue and personal jurisdiction challenges.[3]

## II. Federal Rule 12(b)(3)

Defendants object to the District of Maryland as the proper venue in this case. (ECF 16.) Pursuant to 20 U.S.C §1391(b), an action may be brought in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

---

[2] *See King v. Taylor*, 694 F.3d 650, 659 (6th Cir. 2012), *supra,* regarding the comparative ease of forfeiture of the right to challenge service versus the right to challenge personal jurisdiction because the latter goes to the fundamental "fairness of requiring a defendant to appear and defend in a distant forum."

[3] In footnote 3 to Plaintiffs' Opposition to the Motion, Plaintiffs mention that Defendants "also filed a form styled Consent to Exercise of Jurisdiction by United States Magistrate Judge" for purposes of advising the court whether Defendants consent to a United States Magistrate Judge presiding over the action. (ECF 17 at p. 4.) The court declines to find this mandatory, perfunctory action amounts to a waiver of a Rule 12 challenge. Further, although Plaintiffs do not make reference to it, for purposes of completeness, the court notes that notices of appearance were filed by defense counsel at ECF 11 and 12. The court finds these general notices of appearance, filed on the same day defense counsel asked Plaintiffs' counsel for their consent to an extension to "file our initial pleading or motion" did not waive Defendants' Rule 12 motions. (ECF 14-1.) Defendants expressly advised they might elect to file a motion to dismiss; the court did not expend judicial resources that might be considered wasted were the action not to go forward based on Rule 12(b)(2) or (3); and Defendants did not seek to circumvent Rule 12(h) by asserting one Rule 12 objection and purporting to "reserve" their right to object at a later date on another basis provided by Rule 12(b)(2) through (5). *Accord Glynn v. EDO Corp.,* 641 F. Supp.2d 476, 487 (2009) (regarding non-waiver of Rule 12(b)(2) objection by general notice of appearance); *see Tate v. Smith,* 2016 WL 4444856 *5 (M.D.N.C. Aug. 23, 2016) (holding one may not circumvent Rule 12(h) by purporting to "reserve" unused Rule 12 objections).

(3) if there is no district in which an action may otherwise be brought
as provided in this section, any judicial district in which any
defendant is subject to the court's personal jurisdiction with respect
to such action.

20 U.S.C §1391(b). "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in §1391(b). If it does, venue is proper; if it does not, venue is improper." *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court. For Western Dist. Of Texas,* 571 U.S. 49, 56 (2013). In determining whether venue is proper, the court looks at the "entire sequence of events underlying the claim," rather than just the matters in dispute. *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004). At the motion to dismiss stage, a plaintiff need only make a prima facie showing of venue. *Id.* at 405. In assessing whether venue is proper, the facts are viewed in the light most favorable to the plaintiff. *Aggarao v. MOL Ship Management Co., Ltd.*, 675 F.3d 355, 366 (4th Cir. 2012).

Plaintiffs' complaint asserts that venue is proper in this district because "a substantial part of the events or omissions giving rise to the claims occurred in this District." (ECF 1 p. 3.) Specifically, Plaintiffs claim a substantial part of property that is the subject of the action is situated in Maryland, in accordance with section 1391(b)(2), because the non-conforming face masks allegedly remain in Maryland. They further argue that venue is proper because a substantial part of the events giving rise to the claim occurred in Maryland, because Defendants knew the masks would be sold in Maryland and later attempted to resolve the dispute with AMA Systems, a Maryland company.

In considering the "entire sequence of the events," in this case, venue in Maryland is proper. The face masks were identified as non-conforming when they arrived in Maryland, negotiations to remedy the dispute involved AMA Systems, located in Maryland, and the face masks are alleged

to remain located in a warehouse in Maryland.  The court finds that 20 U.S.C §1391(b)(2) is satisfied.  The request to transfer venue will be denied.

### III.    Federal Rule 12(b)(2)

There are two types of personal jurisdiction: general and specific.  General personal jurisdiction is based on an individual's domicile and where the defendant's contacts with the forum state are "so constant and pervasive as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 122, (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).  There is no allegation of general personal jurisdiction in this case.  Instead, Plaintiffs proceed on theories of specific personal jurisdiction.

To assert specific personal jurisdiction over a nonresident defendant, two conditions must be met: "the state's applicable long-arm statute must confer jurisdiction, and the assertion of jurisdiction must comport with constitutional due process under the Fourteenth Amendment." *Cricket Group, Limited v. Highmark, Inc.*, 198 F. Supp. 3d 540, 543 (D. Md. 2016).

####    a.  Long-Arm Statue

Maryland's long-arm statute provides jurisdiction over an individual who "transacts any business or performs any character of work or service in the State" or "contracts to supply goods, food, services, or manufactured products in the State."  MD. CODE ANN., CTS. & JUD. PROC. § 6-103(b)(1)-(2).  Maryland courts have "consistently held that the reach of the long arm statute is coextensive with the limits of personal jurisdiction delineated under the due process clause of the Federal Constitution[.]"  *Beyond Sys, Inc. v. Realtime Gaming Holding Co.,* 388 Md. 1, 15 (2005).

Defendants assert that they neither "transacted any business or performed any work in Maryland" nor "contracted to supply any goods, food, services or manufactured products in the

State" to support jurisdiction under Maryland's long-arm statute. (ECF 16 p. 4.)  Plaintiffs counter

that the long-arm statute is satisfied for the following reasons:

> "(i) Defendants knowingly sold face masks that would be distributed in Maryland, (ii)
> Defendants formed one or more contracts with Plaintiffs to remedy the delivery of non-
> conforming, fraudulent face masks in Maryland, and (iii) Defendants formed one or more
> contracts with Plaintiffs for the return of the face masks from Maryland."

(ECF 17 p. 7.)

### i. Section 6-103(b)(1)

The phrase "transacting business" under section 6-103(b)(1) does not require commerce or

transactions for profit; it is, however, construed narrowly and typically requires significant

negotiations or intentional advertising.  *Novack v. National Hot Rod Ass'n*, 247 Md. 350 (1967);

*Music Makers Holdings, LLC v. Sarro*, No. RWT 09-cv-1836, 2010 WL 2807805 at *3 (D. Md.

July 15, 2010).  Maryland courts have considered substantial contractual negotiations to meet the

requirements of "transacting business" in Maryland.  *See, e.g., Mohamed v. Michael*, 279 Md. 653,

659 (1977) (finding the long-arm statute satisfied where defendant's "negotiations in Maryland"

were "intensive"); *Jason Pharmaceuticals, Inc. v. Jiana Bros. Packaging Co., Inc.*, 94 Md. App.

425, 433 (1993) (finding the requirements of "transacting business" met where defendant engaged

in several weeks of negotiations with Maryland plaintiff, which resulted in a contract).  Further,

the court may assert personal jurisdiction over a party to a contract in a breach of contract action

where that party has performed "purposeful acts" in Maryland "in relation to the contract, albeit

preliminarily or subsequent to its execution." *Du-Al Corp. v. Rudolph Beaver, Inc.*, 540 F.2d 1230,

1232 (4th Cir. 1976).

The requirement of "transacting business" was not met in *Zavian v. Foudy*, where there

were no "extensive negotiations" and the contracts were "neither formed, examined, nor executed

by [defendants] in Maryland."  130 Md. App. 689, 702 (2000).  In *Stisser v. SP Bancorp, Inc.*, the

Maryland Court of Special Appeals distinguished *Zavian* from *Jason Pharmaceuticals*, *supra*, noting "although the contracting parties in *Zavian* intended to create an ongoing relationship, as compared to the single purchase contract in *Jason*, we focused on the quality of the athletes purposeful contacts with the forum to determine whether they were such that they intended to avail themselves of the benefits and protections of Maryland law." *Stisser v. SP Bancorp, Inc.*, 234 Md. App. 593, 635-36 (2017).

In the instant case, Plaintiffs allege that Defendants negotiated with Plaintiff AMA Systems in Maryland to remedy the problem of non-conforming face masks. Plaintiffs allege that the negotiations resulted in Defendants' agreement to issue a credit for the face masks. Accepting Plaintiff's complaint allegations as true, however, these negotiations were narrow in scope or purpose and of short duration – and thus materially distinguished from the "intensive" negotiations of *Mohamed*, and the weeks-long negotiations of *Jason Pharmaceuticals*. Plaintiffs' opposition refers to the negotiations as "engag[ing] in communications." (ECF 17 p. 6.) At most, it seems Defendants offered to buy back the face masks or offer a credit. This situation is more akin to *Zavian*, where negotiations were limited and the contracts were not formed with parties in Maryland. The court concludes that section 6-103(b)(1) does not provide a basis to assert personal jurisdiction over Defendants.

### ii. Section 6-103(b)(2)

Section 6-103(b)(2) of Maryland's long-arm statute applies only to contracts to supply goods, food, services or manufactured products in Maryland. *Rao v. Era Alaska Airlines*, 22 F. Supp. 3d 529, 535 (D. Md. 2014). This section of the long arm statute does not extend to contracts negotiated in Maryland, where the contracted for goods or services are not provided within the state. *Id.; A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.*, 795 F. Supp. 2d 365, 370 (D. Md. 2011) (internal citations omitted) (holding that section 6-103(b)(2) of the long-arm statute did not

apply where the plaintiff did not "identif[y] any contractual obligations on the part of [defendant] to provide services in Maryland.") *Compare with Tulkoff Food Products, Inc. v. Martin*, No. ELH-17-350, 2017 WL2909250 at \*6 (D. Md. July 7, 2017) (holding 6-103(b)(2) satisfied where the defendants entered into an agreement to deliver goods to Maryland).

Here, there are no allegations that Defendants contracted to provide goods or services in Maryland. Although Defendants were allegedly aware that the face masks would be sold in Maryland, Defendants did not contract to sell the face masks in Maryland. *See McKown v. Criser's Sales and Service,* 48 Md. App. 739, 743 n. 2 (1981) (rejecting the application of section 6-103(b)(2) to a defendant that sold a vehicle in Virginia and documents to register the vehicle in Maryland, representing his knowledge that the vehicle would end up in Maryland). Defendants are alleged to have sold the face masks through Vonnic to Bluemar, who then sold them to AMA Systems in Maryland. While Plaintiffs also allege that Defendants contracted to remedy the problem with AMA Systems, this subsequent contract[4] was not to supply goods or services in Maryland. Instead, Defendants offered either to buy back the masks, or supply a credit for future purchases. (ECF 1, ¶41.) Assuming true all well-pled facts, Defendants did not contract to supply any goods or services in Maryland. The court declines to assert personal jurisdiction under section 6-103(b)(2).

### b. Due Process

Personal jurisdiction over a nonresident defendant is constitutionally permissible where the defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted). The Supreme Court has held that "even a single act"

---

[4] While the court questions whether Vonnic's rejected offer to credit a portion of the purchase price amounts to a contract, for purposes of the Motion, the court accepts Plaintiffs' contention.

between a nonresident defendant and the forum state may establish personal jurisdiction, if it creates a "substantial connection" with the state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985). Another relevant consideration is whether "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The Fourth Circuit applies a three-part test to determine whether a defendant has sufficient minimum contacts with the forum state. *Consulting Eng'rs Corp. v. Geometric Ltd*., 561 F.3d 273, 278 (4th Cir. 2009). The Court will consider, "'(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" *Id.* (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc*., 293 F.3d 707, 712 (4th Cir. 2002)).

Here, Plaintiffs contend that jurisdiction is proper over Defendants, because Defendants contracted with Bluemar, knowing the face masks would be sold and distributed by AMA Systems in Maryland. The Supreme Court has supported a finding of jurisdiction under a "stream of commerce" theory, where a corporation "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980). The Court expanded on the "stream of commerce" theory in *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, in which the Court issued a plurality decision recognizing two theories for the application of the "stream of commerce." 480 U.S. 102 (1987). Justice O'Connor, writing for a plurality of the Court, concluded that "the placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Id.* at 112. Examples

of additional conduct to indicate something more than awareness that a product will reach the forum state include "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.* In contrast, Justice Brennan's concurrence explained that "jurisdiction premised on the placement of a product into the stream of commerce is consistent with the Due Process Clause," and a "showing of additional conduct," is unnecessary. *Id.* at 117.

The Supreme Court attempted to clarify the "steam of commerce" theory in *J. McIntyre Machinery, Ltd. V. Nicastro*, holding that while this theory may support a finding of jurisdiction, "the defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum state." 564 U.S. 873, 882 (2011). Importantly, none of the theories of "stream of commerce" personal jurisdiction find that "a single isolated sale … [is] sufficient." *Id.* at 888.

The Fourth Circuit has adopted Justice O'Connor's approach to "stream of commerce" cases:

> To permit a state to assert jurisdiction over any person in the country whose product is sold in the state simply because a person must expect that to happen destroys the notion of individual sovereignties inherent in our system of federalism. Such a rule would subject defendants to judgment in locations based on the activity of third persons and not the deliberate conduct of the defendant, making it impossible for defendants to plan and structure their business contacts and risks.

*Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945 (4th Cir. 1994). As such, to support stream of commerce personal jurisdiction in the Fourth Circuit, the defendant must have engaged in activity that was purposefully directed at the state. *In re Celotex Corp.*, 124 F.3d 619, 629 (4th Cir. 1997).

In *Lesnick*, the Fourth Circuit affirmed the trial court's denial of personal jurisdiction over a nonresident defendant who knew its products would be sold in Maryland. While the defendant acknowledged that "it placed the product in commerce … with the knowledge that [the product] would be sold in Maryland," the court held that there was no additional conduct directed toward the state of Maryland to support a finding of personal jurisdiction. *Id.* at 946-47. In *Celotex,* the Fourth Circuit ruled similarly, affirming the trial court's denial of personal jurisdiction where the plaintiff "has not alleged more than the entry of [the products] into the stream of commerce with the expectation that they would be purchased in West Virginia." 124 F.3d at 629. Critically, there were no allegations of purposeful activity directed at West Virginia. *Id.*[5]

Applying this formulation, this court in *KeraLink International, Inc. v. Stradis Healthcare, LLC*, determined that a defendant's sale of a product to a party who then sold the product to the plaintiff was insufficient to support personal jurisdiction despite the defendant's awareness that the product might be sold to the forum state. No. CCB-18-2013, 2018 WL 6790305 at *3 (D. Md. December 26, 2018) (finding plaintiff had "not sufficiently alleged that [defendant] targeted Maryland or that 'something more' than mere foreseeability evidenced [defendant's] purposeful availment of the privilege of conducting business in Maryland.")

In this case, Plaintiffs allege that Defendants, through Vonnic, sold the face masks to Bluemar knowing they would be sold to AMA Systems in Maryland. The "stream of commerce" theory is applicable here, as Plaintiffs allege that Defendants placed Vonnic's products on the market with the expectation that they would be sold in Maryland. Because the Fourth Circuit has

---

[5] *See also Boit v. Gar-Tec Products, Inc.*, 967 F.2d 671, 683 (1st Cir. 1992) (affirming the lower court's denial of jurisdiction where the only contact the defendant had with the forum state was the sale of its product to a third party who sold the product to plaintiff, where there were no allegations "[defendant] designed the product for Maine, advertised in Maine, established channels for providing regular advice to customers in Maine, or marketed the product through a distributor who had agreed to serve as a sales agent in Maine.")

adopted Justice O'Connor's application of the "stream of commerce" theory, additional contacts are needed to demonstrate that Defendants purposefully directed their activity in Maryland.

Here, none of the factors identified by Justice O'Connor are present.  Similar to the defendant in *Boit*, *supra,* there are no allegations that Defendants designed the face masks to be marketed in Maryland, advertised in Maryland, established any channels to provide regular advice to customers in Maryland, or marketed the face masks through a distributor who agreed to serve as a sales agent in Maryland.

Plaintiffs have alleged merely that Defendants were aware that the face masks would be sold in Maryland; this type of conduct alone was determined to be insufficient in *Lesnick* and *Celotex.*  At most, Defendants knew their face masks would end up in Maryland and engaged in limited communications to negotiate a resolution to the dispute regarding nonconforming products. This case arises out of a "single isolated sale." *See McIntyre*, 564 U.S. at 888.  Thus, in addition to lacking support of the long-arm statute, extension of personal jurisdiction over Defendants does not survive the due process analysis.

## IV.    Federal Rule 12(b)(6)

Defendants argue that the action must be dismissed against CEO Lin for failure to state a claim upon which relief can be granted on the basis that the corporate form protects an officer like Lin from liability for Vonnic's contract with Bluemar.  (ECF 16 p. 10.)  Rule 8(a)(2) requires a complaint provide only a "short and plain statement showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  While factual allegations in a complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Outside of fraud, a corporate officer is not personally liable for an act taken on behalf of a corporation or for its contracts. *Ace Development Co. v. Harrison*, 196 Md. 357, 366 (1950). In entering into contracts, when a party "plainly appears to be acting as the agent of another, the stipulations of the contract are to be considered as solely to bind the principal, unless it manifestly appears by the terms of the instrument that the agent intended to superadd or substitute his own responsibility for that of the principal." *Burkhouse v. Duke*, 190 Md. 44, 46-47 (1948). Defendants argue that Lin was acting on behalf of Vonnic and cannot be held individually liable for the contract at issue in this case. (ECF 16.)

In opposition, Plaintiffs argue that the complaint alleges Lin acted in his individual capacity in contracting with Bluemar:

> [The] complaint alleges that Bluemar entered into a contract with Lin, in his individual capacity, for the purchase of certain face masks. Id. ¶ 8 (Bluemar reached out to Lin to purchase masks), ¶ 9 (Lin offered masks for sale to Plaintiffs), ¶ 10 (Lin represented he could provide certain masks to Plaintiffs), ¶ 16 (Bluemar entered into a purchase order with Lin), ¶ 17 (agreement with Lin was memorialized), ¶¶ 18, 36 (masks did not conform to Lin's representations or agreement), ¶ 45 (Lin acted in individual capacity), ¶¶ 51, 57-67 (Count I).

(ECF 17 p. 14.) In each of these complaint allegations, Plaintiffs make joint reference to Defendants Lin and Vonnic as "Lin and Vonnic." Importantly, paragraph 8 of the complaint alleges "Lin indicated that through his company Vonnic, he could supply certified PPE." (ECF 1 p. 3.) While Plaintiffs allege generally that Lin was a party to the contract, these allegations are conclusory. Plaintiffs' complaint does not allege Lin acted in his individual capacity; to the contrary, Plaintiffs allege that Lin was acting "through his company," Vonnic.

Defendants' 12(b)(6) motion will be granted and Plaintiffs' complaint will be dismissed as against Defendant Lin.

**CONCLUSION**

For the reasons set forth herein, Defendants Vonnic and Lin's Motion to Dismiss, or, in the Alternative, Request for Transfer of Venue will be **GRANTED in part**, **DENIED in part**, as follows:   The Request for Transfer of Venue will be **DENIED.**   The Motion to Dismiss for lack of personal jurisdiction will be **GRANTED** with respect to both Defendant Vonnic and Defendant Lin.   The Motion to Dismiss for failure to state a claim as against Defendant Lin will be **GRANTED**.   The court will issue an accompanying order in accordance with this memorandum opinion.

/S/

_____

Judge Julie R. Rubin
United States District Judge
June 15, 2022